## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                                        **NO. 13-02**

**THADDEUS RICHARDSON**                              **SECTION I**

### ORDER

Before the Court is a petition[1] filed by petitioner, Thaddeus Richardson ("Richardson"), for post-conviction relief pursuant to 28 U.S.C. § 2255.  The government opposes the petition.[2]   For the following reasons, the Court finds that an evidentiary hearing is not necessary and the petition is **DENIED**.

### BACKGROUND

On January 9, 2013, Richardson was charged in a two-count bill of information.[3]  Count 1 charged that on or about November 20, 2012, in the Eastern District of Louisiana, Richardson knowingly and intentionally possessed with the intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled dangerous substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).[4]  Count 2 charged that on or about November 20, 2012, in the Eastern District of Louisiana, Richardson knowingly possessed firearms (a Glock .40 caliber semi-automatic handgun, a Freedom Arms .22 caliber handgun, a Smith and Wesson .38 caliber revolver, and a Proff Tested 20 gauge shotgun) in furtherance of a drug trafficking crime, to wit,

---

[1]R. Doc. No. 48.
[2]R. Doc. No. 52.
[3]R. Doc. No. 11.
[4]R. Doc. No. 11, at 1.

possession with intent to distribute heroin and oxycodone pills in violation 21 U.S.C. § 841(a)(1), all in violation of 18 U.S.C. § 924(c)(1).[5]  The bill of information also included notices of drug and gun forfeitures.[6]

On March 1, 2013, the Court was informed that Richardson had entered into a plea agreement with the government in which he agreed to plead guilty to counts 1 and 2 of the bill of information.[7]  In exchange, the government agreed that it would not charge him with any other violations of the Federal Controlled Substances Act and the Federal Gun Control Act that he may have committed in the Eastern District of Louisiana prior to November 13, 2012, except for any crimes of violence or fraud against the United States.[8]  The plea agreement was predicated on Richardson truthfully informing federal agents of the details of any such crimes with which he was involved.[9]  The plea agreement contained a waiver of appeal and post-conviction proceedings.[10]

At rearraignment, counsel for the government read the factual basis[11] into the record.[12] Richardson agreed under oath that he had signed the factual basis after reviewing it with his counsel.[13] Richardson had no questions for the government or his counsel, stated that he understood the evidence, that the government's statements were correct, and that he "did the things in the factual basis."[14]

---

[5]R. Doc. No. 11, at 1-2.
[6]R. Doc. No. 11, at 2-3.
[7]R. Doc. No. 29, at 1.
[8]R. Doc. No. 29, at 1.
[9]R. Doc. No. 29, at 1.
[10]R. Doc. No. 29, at 3.
[11]R. Doc. No. 28.
[12]R. Doc. No. 53, at 30-33.
[13]R. Doc. No. 53, at 33.
[14]R. Doc. No. 53, at 33-34; *see also* R. Doc. No. 28.

With respect to the firearms charge in count 2, the factual basis stated that when Richardson sold five Oxycodone tablets to a confidential source at his apartment on November 13, 2012, he "had a semi-automatic pistol displayed on the table where the purchase occurred."[15]  He was also "observed [to be] in possession of a semi-automatic handgun" during another drug transaction on November 19, 2012.[16]  When Richardson was pulled over in his vehicle on November 20, 2014, law enforcement officers "recovered a .22 caliber pistol from the door panel of the driver's side" and "a Glock semi-automatic .40 caliber handgun from underneath the driver's side seat," both of which were loaded.[17]  They also recovered from the vehicle a briefcase containing "166 Oxycodone tablets, 11 Lortab tablets and approximately 1 gram of Heroin" and "a notebook which appeared to be a ledger for illegal sales of narcotics."[18]  Richardson agreed in the factual basis that he possessed the firearms recovered from his vehicle "in furtherance of [his] possession with the intent to distribute the Oxycodone tablets and Heroin in his possession."[19]

Richardson admitted that when officers executed a search warrant for his apartment, they recovered a .38 caliber handgun and a shotgun, both of which were "loaded and located within close proximity to the Oxycodone pills, scales, syringes and packaging materials recovered" from the apartment.[20]  Richardson again agreed in the factual basis that "the handgun and the shotgun were possessed by [him] both in furtherance of [his] possession with the intent to distribute the Oxycodone pills recovered from the apartment, and in furtherance of the November 13, 15, and 19,

---

[15]R. Doc. No. 28, at 1-2.
[16]R. Doc. No. 28, at 2.
[17]R. Doc. No. 28, at 2.
[18]R. Doc. No. 28, at 2-3.
[19]R. Doc. No. 28, at 3.
[20]R. Doc. No. 28, at 3.

2012, distributions of narcotics (Heroin and Oxycodone) to the confidential source that took place at [his] apartment."[21]

At the rearraignment, the Court informed Richardson that he faced "a maximum term of 20 years imprisonment" as to count 1 and, as to count 2, "a minimum of five years imprisonment which must be served consecutive to any sentence imposed with respect to Count 1."[22]  Richardson stated that he understood that he would be sentenced within those ranges.[23]

Also at rearraignment, counsel for the government summarized the waiver of appellate and post-conviction relief in the plea agreement,[24] and the Court confirmed that Richardson understood that he had rights to collateral review and that he was waiving those rights, except that he retained the right to appeal or challenge (1) "any sentence imposed in excess of the statutory maximum," (2) his conviction or sentence if he could show he "received ineffective assistance of counsel and [that] the ineffective assistance directly affected the validity of [his] plea, the waiver of appeal, or the waiver of collateral challenge rights," and (3) "the bill of information [if it] did not state an offense and/or where the factual basis for the plea did not show the commission of an offense."[25] Richardson stated under oath that he understood the waiver and the rights he was giving up.[26] Counsel for Richardson stated that he had explained "the waiver of appellate rights, both on direct

---

[21]R. Doc. No. 28, at 3.
[22]R. Doc. No. 53, at 10-11.  This instruction was based on the language of 18 U.S.C. § 924(c)(1)(A)(i), which states that the potential sentence is "a term of imprisonment of not less than 5 years," and  18 U.S.C. § 924(c)(1)(D)(ii), which states that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person."
[23]R. Doc. No. 53, at 11.
[24]R. Doc. No. 53, at 16-17.
[25]R. Doc. No. 53, at 22-23.
[26]R. Doc. No. 53, at 23-25.

appeal and through a collateral attack" to his client, and that he was satisfied that Richardson understood the rights he was giving up.[27]   Richardson agreed with his counsel's statements and he had no questions.[28]

On June 6, 2013, the Court sentenced Richardson to a total term of imprisonment of 78 months, consisting of 18 months as to count 1 and the mandatory minimum 60 consecutive months as to count 2.[29]   The sentence imposed as to count 1 was a downward variance based on Richardson's lack of prior criminal record, the small amount of heroin involved, the significant 60-month sentence imposed as to count 2, and the many letters submitted on Richardson's behalf.[30]   At the sentencing hearing, the Court overruled an objection to a 2-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purpose of distributing a controlled substance.[31]   Richardson's counsel argued for leniency in sentencing, but he did not specifically argue for a downward variance based on Richardson's pretrial release on bond, which initially required him to reside at a halfway house although it was later modified to permit home confinement.

Richardson filed no direct appeal.  He filed this petition pursuant to 28 U.S.C. § 2255 on June 5, 2014,[32] and a corrected memorandum of law on June 20, 2014.[33]  The government filed its

---

[27]R. Doc. No. 53, at 27.
[28]R. Doc. No. 53, at 28.
[29]R. Doc. No. 45, at 2.
[30]R. Doc. No. 68, at 15-16.
[31]R. Doc. No. 68, at 8.
[32]R. Doc. No. 48.
[33]R. Doc. No. 50.

opposition on July 18, 2014,[34] to which Richardson filed a reply.[35]  The government then sought and received leave to file a supplemental response,[36] which Richardson both responded to[37] and moved to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.[38]  The matter is now under submission and ripe for a decision.

## LAW AND ANALYSIS

### I.     Applicable Standards

### A.     28 U.S.C. § 2255

Section 2255(a) provides a prisoner in custody with four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426-27 (1962).  Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed.  *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).  "[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction . . . ."  *United States v. Hayman*, 342 U.S. 205, 222-23 (1952).  The inquiry does not extend to the misapplication of sentencing guidelines.  *See Williamson*, 183 F.3d at 462.

---

[34]R. Doc. No. 52.

[35]R. Doc. No. 56.  Between the filing of the government's opposition and Richardson's reply, the Court granted Richardson an extension and dismissed as moot his motion requesting that the government serve him with its opposition.  *See* R. Doc. No. 55.

[36]R. Doc. No. 57, 60.

[37]R. Doc. No. 66.

[38]R. Doc. Nos. 63, 67.

"The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992) (citing *Andrews v. United States*, 373 U.S. 334, 339 (1963)).  Pursuant to § 2255, the Court must grant defendant a hearing to determine the issues and make findings of fact and conclusions of law unless "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

"The Supreme Court has emphasized repeatedly that a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (quotation omitted).  "[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" or actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998).  The Supreme Court has held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought" in a § 2255 proceeding. *Massaro*, 538 U.S. at 509; *see also, e.g.*, *United States v. Johnson*, 124 F. App'x 914, 915 (5th Cir. 2005).

**B.    Ineffective Assistance of Counsel**

The United States Supreme Court set forth the standard for judging the performance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Court articulated a two-part test that requires the petitioner to prove (1) deficient performance and (2) resulting prejudice. *Id.* at 697.  Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act

7

or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test looks to the prejudice caused by counsel's allegedly deficient performance.  This requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is that which renders the proceeding unfair or unreliable, *i.e.*, undermines confidence in its outcome." *Williamson*, 183 F.3d at 463.  A petitioner who pleaded guilty must show the outcome of the plea process would have been different with competent advice and "but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384-85 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  In addition, "[a]ny additional amount of jail time is significant for purposes of showing prejudice." *See United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012) (citing *United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004)).

"An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Medellin v. Dretke*, 371 F.3d 270, 279 (5th Cir. 2004) ("Because the claim . . . is without merit, the claim of ineffective assistance of counsel for not raising the issue on appeal is, likewise, without merit."); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

## C.     Waiver of Post-Conviction Relief

A defendant may waive his right to 28 U.S.C. § 2255 post-conviction relief if the waiver was

knowing and voluntary. *United States v. White*, 307 F.3d 336, 343-44 (5th Cir. 2002) (citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)). For such a waiver to be knowing and voluntary, a defendant must understand that he has a right to collateral review and that he is giving up that right. *United States v. Jacobs*, 635 F.3d 778, 781 (5th Cir. 2011) (citation and quotation omitted).

"[A]n ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself." *White*, 307 F.3d at 343. A "knowing and intelligent waiver" may not be "easily evaded" merely by raising an ineffective assistance of counsel claim. *Id.* at 344. Where a defendant knowingly and voluntarily agrees to a waiver, despite alleged ineffective assistance of counsel, "the guilty plea sustains the conviction and sentence and the waiver can be enforced." *Id.* at 343-44.

## II.   Discussion

Richardson asserts four ways in which his counsel purportedly rendered ineffective assistance: (1) failing to object to a Rule 11(b)(1)(H) error when the Court did not correctly inform him of the statutory maximum as to count 2; (2) failing to object that the factual basis did not support a conviction on count 2; (3) failing to file a motion to dismiss the charges based on a Speedy Trial Act violation; and (4) failing to move for a downward variance at sentencing based on Richardson's 100 days of pretrial detention. The government responds that (1) Richardson's knowing and voluntary waiver of post-conviction relief bars the ineffective assistance of trial claims based on the Speedy Trial Act violation and the sentence imposed; (2) the factual basis supports his conviction on count 2; and (3) Richardson has not established ineffective assistance of counsel based on the alleged Rule 11 error.

## A.   Waiver of Post-Conviction Relief

As a threshold matter, the government invokes Richardson's waiver of post-conviction relief in the plea agreement as a bar to two of his four claims of ineffective assistance of counsel.  Waivers of post-conviction relief "must be asserted by the government or be deemed waived, functioning much like affirmative defenses."  *United States v. Del Toro-Alejandre*, 489 F.3d 721, 722 (5th Cir. 2007).  The government invoked the waiver late in these proceedings in a supplemental memorandum[39] filed after Richardson had already submitted his reply brief.  Richardson moves to strike the supplemental memorandum as untimely and to prohibit the government from enforcing the waiver.[40]

"It is well settled that Rule 15 [of the Federal Rules of Civil Procedure] applies to federal habeas proceedings."  *United States v. Gonzalez*, 592 F.3d 675, 679 (5th Cir. 2009).[41]  Pursuant to Rule 15, the Court has discretion to grant leave to amend in a § 2255 proceeding, and leave "'shall be freely given when justice so requires.'"  *See, e.g.*, *United States v. Nabor*, 256 F. App'x 669, 670 (5th Cir. 2007) (quoting Fed. R. Civ. P. 15).  Even where the amendment is filed *without* leave of court, which leave the government sought and received in this case, this discretion extends to amendments by the government as well as to the petitioner.  *See United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (finding no abuse of discretion when district court allowed the government to assert a procedural bar in an amended pleading filed without leave of court).  Under these

---

[39]R. Doc. No. 61.

[40]R. Doc. No. 63.

[41]On its face Rule 15 applies only to amendment of "pleadings."  An application for relief pursuant to § 2255 "must be in the form of a *motion* to vacate, set aside, or correct the sentence."  *See* Rule 2(a), Rules Governing § 2255 Proceedings (emphasis added).  Nonetheless, courts routinely apply Rule 15 to requests for amendment of § 2255 motions.  *See, e.g.*, *United States v. Trevino*, 554 F. App'x 289, 292-93 (5th Cir. 2014) (analyzing amendment of § 2255 motion in terms of Rule 15).

circumstances, the Court exercises its discretion to deny the motion to strike and to permit the government to assert the post-conviction relief waiver in its supplemental memorandum.[42]

The Rule 11 colloquy, as set forth above and in the rearraignment transcript,[43] conclusively establishes that the waiver of post-conviction relief was knowing and voluntary and Richardson claims no ineffective assistance of counsel related to the waiver itself.  The government asserts it as a bar to Richardson's ineffective assistance of counsel claims based on (1) a failure to move to dismiss for a Speedy Trial Act violation, and (2) a failure to move for a downward variance based on the conditions of his presentence release.  In response, Richardson urges that the waiver does not apply and the Court should reach the merits of those two claims because his conviction was "tainted" by the purported ineffective assistance.[44]

Richardson's claim of ineffective assistance based on counsel's failure to move for a downward departure based on his pretrial halfway house/home confinement service is plainly barred by the waiver.  Nothing about that sentencing-related claim implicates the knowing and voluntary nature of his guilty plea or the waiver itself, or any other issue outside the scope of the waiver.[45]

---

[42]The Court notes that the government's delayed invocation of the waiver resulted in unnecessary additional briefing, and it should not be repeated in the future.

[43]R. Doc. No. 53, at 22-25, 27, 28.

[44]R. Doc. No. 66, at 2-3.

[45]Even if the Court were to reach the merits of the claim, Richardson would not be entitled to relief.  Richardson contends that if his counsel had moved for a downward variance, his sentence would have been reduced by 100 days to reflect the time he spent on bond in a halfway house and on home confinement before sentencing.  R. Doc. No. 50, at 22-24.  The Bureau of Prisons, not the Court, "determines what credit, if any, will be awarded to prisoners for time spent in custody prior to the commencement of their federal sentences."  *Leal v. Tombone*, 341 F.3d 427, 428 (5th Cir. 2003) (citing *United States v. Wilson*, 503 U.S. 329, 331-32, 334 (1992); 18 U.S.C. § 3585(b)).  Presentence home confinement or time in a halfway house does not entitle a defendant to credit toward his or her sentence.  *See Siebert v. Chandler*, 571 F. App'x 328, 328-29 (5th Cir. 2014) (citing *Reno v. Koray*, 515 U.S. 50 (1995)) (home confinement); *Munoz v. Maye*, 485 F. App'x 699, 699-700 (5th Cir. 2012) (citing *Reno v. Koray*) (halfway house).

The Court also concludes that the waiver bars Richardson's ineffective assistance of counsel claim predicated on the Speedy Trial Act violation.  Richardson contends that his counsel rendered deficient performance by failing to move to dismiss the charges based on a Speedy Trial Act violation, and if the motion had been filed "all criminal charges should have been dismissed or dropped" before he pleaded guilty.[46]  However, Richardson's contention that the charges would have been dismissed if counsel had rendered effective assistance does not attack the knowing and voluntary nature of his guilty plea as Richardson's claim does not relate to the process by which he agreed to plead guilty.  *See Parisi v. United States*, 529 F.3d 134, 138-39 (2d Cir. 2008) (rejecting an attempt to avoid a post-conviction relief waiver based on argument that counsel was ineffective because "an effective lawyer would have successfully obtained dismissal of his case");[47] *cf. United States v. Cruz*, 455 F. App'x 508, 510 (5th Cir. 2011) (explaining that a voluntary and unconditional guilty plea waives nonjurisdictional defects, including alleged speedy trial violations).  Accordingly, Richardson's claim of ineffective assistance of counsel based on the Speedy Trial Act violation does not attack the knowing and voluntary nature of his guilty plea and it is barred by his waiver of post-

---

Richardson does not cite any authority suggesting that his  presence time at the halfway house or on home confinement could justify a downward variance in his sentence.  The cases Richardson cites address whether a district court can consider a defendant's service of a portion of a *sentence* of home confinement as a factor when *resentencing* that defendant.  *See United States v. Romualdi*, 101 F.3d 971, 977 (3rd Cir. 1996); *United States v. Miller*, 991 F.2d 552, 554 (9th Cir. 1993), *overruled on other grounds by Koon v. United States*, 518 U.S. 81 (1996).  Nevertheless, the Court was aware of Richardson's presence conditions when it sentenced him and the sentence received by Richardson would not have been altered by the Court in any way based upon such circumstances.

[46]R. Doc. No. 50, at 22; R. Doc. No. 56, at 6-7.

[47]Unlike the petitioner in *Parisi*, Richardson does not "connect[] the alleged ineffectiveness of [his] attorney with the voluntary nature of his plea."  *See* 529 F.3d at 139.

conviction relief.[48]

## B.   Ineffective Assistance: Failure to Object to Sufficiency of Factual Basis

Next, Richardson contends that his counsel rendered ineffective assistance because he did not object at rearraignment that the factual basis did not support the "possession in furtherance of" element of the § 924(c) charge in count 2, and that he would have proceeded to trial had counsel made that objection.[49]   In response, the government responds that the factual basis adequately

---

[48] Pursuant to 18 U.S.C. § 3161(b),  an "information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested."  Richardson was arrested on November 20, 2012. R. Doc. No. 1 at 3; R. Doc. No. 48, at 36.  He was not charged in the bill of information until January 9, 2013, which was fifty days after his arrest.  R. Doc. No. 11.  Although § 3161(h)(1)(D) states that "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is "excluded in computing the time within which an information or an indictment must be filed," the bill of information was still untimely even excluding the days related to the two motions filed in the period between Richardson's arrest and the filing of the bill of information.  Accordingly, Richardson's Speedy Trial Act rights were violated.

Pursuant to 18 U.S.C. § 3162(a)(1), this Speedy Trial Act violation required dismissal of the charges in the untimely bill of information, although the Court would have had discretion to dismiss with or without prejudice.  *See United States v. May*, 819 F.2d 531, 533 (5th Cir. 1987).  In deciding whether to dismiss with or without prejudice, the Court would have considered "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  18 U.S.C. § 3162(a)(1).  Although the record is not sufficiently developed with respect to some of these factors, it is clear that a dismissal *with prejudice* would not have been appropriate in light of the seriousness of Richardson's firearms charge and the negligible prejudice, if any, that would have resulted from the short delay in the filing of the bill of information.

Parenthetically, the Court notes that the government's briefing on this issue was inadequate. First, the government relied on authority addressing constitutional speedy trial violations, not the Speedy Trial Act.  *See* R. Doc. No. 52, at 6-7; *see also United States v. Frye*, 372 F.3d 729, 734 (5th Cir. 2004) ("A claim under the Speedy Trial Act differs in some significant ways from a claim under the sixth amendment speedy trial clause.") (internal quotation marks and alteration omitted). Second, the government accepted without question Richardson's initial erroneous calculation that only thirty-two days had elapsed between his arrest on November 20, 2012, and return of the bill of information on January 9, 2013, which was based on a mistaken exclusion of weekends and holidays.  R. Doc. No. 50, at 20; R. Doc. No. 52, at 5-7.  When Richardson corrected this error in his reply brief, R. Doc. No. 56, at 5, the government did not respond.

[49]R. Doc. No. 50, at 9.

supports Richardson's plea to count 2 because Richardson signed and agreed to a factual basis admitting that he possessed the firearms in furtherance of a drug trafficking crime.[50]

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "The factual basis requirement protects a defendant who may plead with an understanding of the nature of the charge, but without realizing that his conduct does not actually fall within the definition of the crime charged." *United States v. Alvarado-Casas*, 715 F.3d 945, 950 (5th Cir. 2013) (internal quotation marks and alteration omitted). "The district court must compare (1) the conduct to which the defendant admits with (2) the elements of the offense charged in the indictment or information." *United States v. Hildenbrand*, 527 F.3d 466, 474-75 (5th Cir. 2008) (internal quotation marks omitted).

Richardson asserts a deficiency of the factual basis, as well as his counsel's ineffective assistance, claiming a failure to object to that deficiency with respect to one element of the § 924(c) charge: whether he possessed the firearms "in furtherance of" a drug trafficking crime.[51]  A defendant's possession of a firearm is "in furtherance of" a drug trafficking crime when it "furthers, advances, or helps forward the drug trafficking offense." *United States v. Ceballos-Torres*, 218 F.3d 409, 415 (5th Cir. 2000). "Having an accessible firearm may further drug trafficking by, inter alia, defending against robbery, providing protection during a deal, and allowing the trafficker to defend his turf." *See United States v. Saulsberry*, 503 F. App'x 265, 267 (5th Cir. 2012) (per curiam).  The Fifth Circuit has articulated the following factors as relevant to "whether a particular defendant's possession furthers, advances, or helps forward a drug trafficking offense":

---

[50]R. Doc. No. 52, at 4-5.
[51]R. Doc. No. 50, at 15-16.

the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

*Ceballos-Torres*, 218 F.3d at 414-15.

Several Fifth Circuit cases provide useful benchmarks which are to be considered when determining which facts support a finding of possession of a firearm "in furtherance of" a drug trafficking crime. In *Ceballos-Torres*, the Fifth Circuit affirmed a § 924(c) conviction because the defendant owned an illegal firearm which was "loaded and easily accessible" in his apartment, "along with a substantial amount of drugs and money." *See id.* at 415. Together, such factors "reasonably support[ed] a finding that [his] gun protected his drugs and money against robbery." *Id.* In *Saulsberry*, the Fifth Circuit affirmed a § 924(c) conviction based in large part on the defendant's possession of a shotgun, rifle, and an inoperable handgun, all accessible in his bedroom "along with ammunition, a bullet-proof vest, and a substantial amount of drugs . . . . packaged for distribution." *See* 503 F. App'x at 267-68 ("The factors of the type of drug activity . . ., accessibility, and proximity to the drugs support the conclusion that the record was not devoid of evidence that Saulsberry possessed the firearms in furtherance of drug trafficking."). In *United States v. Palmer*, on the other hand, the Fifth Circuit vacated a § 924(c) conviction, notwithstanding the defendant's guilty plea, because (1) the gun was kept unloaded in a safe separate from "much of" the defendant's drugs, (2) the defendant had no ammunition for the gun, and (3) the defendant expressly "denied use of the gun for trafficking" at his colloquy. *See* 456 F.3d 484, 490 (5th Cir. 2006).

15

With those cases in mind, the Court considers the factual basis in this case.[52]  As set forth above, Richardson signed and agreed under oath to a factual basis establishing that he possessed two loaded handguns within easy access of his vehicle's driver's seat as he transported oxycodone and heroin.[53]  He also admitted that at his apartment, where he kept additional drugs and paraphernalia, he kept another handgun and a shotgun (both loaded) in close proximity to the drugs.[54]  The factual basis reflects that Richardson "displayed" a handgun on the table while conducting a drug sale, and that he was observed "in possession of a semi-automatic handgun" during a drug sale on another occasion.[55]  The factual basis in this case is very different from the facts in *Palmer*, and much more similar to the facts set forth in *Ceballos-Torres* and *Saulsberry*.

Richardson contends, without submitting or describing any supporting evidence, that he "has been legally possessing firearms on his person for the last 26 years,"[56] and that he "had a legal permit to possess the firearms [so] the fact that the firearms were on his person or around him during drug transactions [was] a mere accident or coincidence."[57]  The legitimate/illegal status of possession of any firearm is one factor to consider, *see Ceballos-Torres*, 218 F.3d at 415, but it is decisively outweighed by the other factors present in this case.  Richardson possessed a total of four easily accessible loaded firearms in both his car and his apartment, all of which were in close proximity to drugs and to the drug sales that he was conducting.  These facts are utterly inconsistent

---

[52]The government's briefing on this issue is cursory; in the future, detailed analysis of the contents of a petitioner's factual basis and comparison to relevant cases will be more useful to the Court.

[53]R. Doc. No. 28, at 2-3.

[54]R. Doc. No. 28, at 3.

[55]R. Doc. No. 28, at 2.

[56]R. Doc. No. 50, at 15.

[57]R. Doc. No. 50, at 16.

with "mere accident[a] or coinciden[tal]" possession of the firearms during drug trafficking offenses.

The Court does not need to hold an evidentiary hearing to conclude that the factual basis conclusively establishes that Richardson possessed his arsenal "in furtherance of" drug trafficking offenses.  Richardson has not established deficient performance or prejudice with respect to this claim.

## C.  Ineffective Assistance: Failure to Object to Rule 11(b)(1)(H) Violation

Finally, Richardson contends that he is entitled to post-conviction relief because his counsel, having himself failed to inform Richardson of the statutory maximum as to count 2, failed to object when the Court erroneously instructed him as to the maximum possible sentence as to count 2.[58] Richardson asserts that this was constitutionally ineffective assistance of counsel and, had counsel objected to the Rule 11 violation, he would not have pleaded guilty and he would instead have proceeded to trial.[59]  The government contends that the Court adequately notified Richardson of the sentence he faced with respect to count 2.[60]

Rule 11(b)(1)(H) of the Federal Rules of Criminal Procedure requires the Court to inform a defendant of, and ensure that he or she understands, "any maximum possible penalty, including imprisonment, fine, and term of supervised release."  A defendant's ignorance of the maximum penalty for an offense to which he has pleaded guilty implicates the knowing and voluntary nature of that plea.  *See Guerra*, 94 F.3d at 995.  Accordingly, if a petitioner asserts that his counsel failed to advise him of the correct sentencing range and failed to correct a district court's "erroneous advice regarding the minimum and maximum sentence," he or she potentially states a claim for

---

[58]R. Doc. No. 50, at 8.
[59]R. Doc. No. 48, at 37; R. Doc. No. 50, at 8.
[60]R. Doc. No. 52, at 3-4.

unconstitutional ineffective assistance of counsel.  *See United States v. Chapa*, 181 F.3d 96, 1999 WL 346938, at *4 (5th Cir. 1999) (unpublished table opinion).

The maximum penalty for Richardson's violation of § 924(c) was life imprisonment because the statutory language of § 924(c) "*implicitly* authorize[s] district courts to impose sentences . . . up to a maximum of life imprisonment."  *See United States v. Sias*, 227 F.3d 244, 246 (5th Cir. 2000) (emphasis added); *see also United States v. Shabazz*, 564 F.3d 280, 289 (3rd Cir. 2009).[61]

Richardson does not dispute that the applicable mandatory minimum was five years consecutive to any other count.  *See* 18 U.S.C. § 924(c)(1)(A)(i), (c)(1)(D)(ii).  The Court informed Richardson that his potential sentence with respect to count 2 was "a minimum of five years imprisonment which must be served consecutive to any sentence imposed with respect to Count 1."[62] The plea agreement likewise stated the potential sentence with respect to count 2 as "not less than 5 years imprisonment."[63]  If the statutory language of § 924(c) only *implicitly* authorizes a life sentence, a Rule 11(b)(1)(H) colloquy which tracks the statutory language of § 924(c) does not *explicitly* inform a defendant of the maximum penalty of life imprisonment.  Accordingly, for the purpose of resolving Richardson's argument in this particular case, the Court will concede error and acknowledge that the rearraignment did not comply with Rule 11(b)(1)(H) as Richardson was not explicitly informed that the maximum possible penalty on count 2 included life imprisonment.  *See*

---

[61]In its opposition, the government misstates the law with respect to the maximum penalties for § 924(c) convictions.  A life sentence is only *mandatory* for a conviction "[i]n the case of a second or subsequent conviction under this subsection" where "the firearm involved is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler."  18 U.S.C. § 924(c)(1)(C)(ii).  The government misinterprets this provision to mean that *only* those circumstances can carry a life sentence.  R. Doc. No. 52, at 3 n.1.  As explained above, every § 924(c) conviction carries a potential maximum sentence of life imprisonment.  *See Sias*, 227 F.3d at 246.

[62]R. Doc. No. 53, at 11.

[63]R. Doc. No. 29, at 2.

18

*United States v. Todd*, 521 F.3d 891, 895 (8th Cir. 2008) (finding Rule 11(b)(1)(H) error when the district court informed defendant "his term of imprisonment could be 'far in excess of five years,' but never advised the defendant that the maximum term of imprisonment was life").

However, the Court concludes that Richardson has not shown the requisite prejudice to establish ineffective assistance of counsel.  Richardson was correctly informed of the mandatory consecutive five-year minimum as to count 2 which is the sentence he received as to that count. Therefore, the alleged Rule 11 error, which did not explicitly state Richardson's count 2 sentencing exposure, does not establish prejudice under these circumstances because Richardson in fact received the minimum sentence of which he was indisputably informed and aware.  *See Chapa*, 1999 WL 346938, at *6 (rejecting claim that "counsel was ineffective in failing to advise him of the correct maximum sentence and to correct the district court's error" because "[w]here, as here, the sentencing court incorrectly understates the maximum sentence allowed by law, and then proceeds to impose a sentence below the maximum the court advised was possible, the court's error is harmless.").

## CONCLUSION

An evidentiary hearing is required on defendant's petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  For the foregoing reasons, the petitions, files, and record of the case conclusively demonstrate that petitioner is not entitled to relief.  *See Bartholomew*, 974 F.2d at 41.  Accordingly,

**IT IS ORDERED** that Richardson's motion to strike is **DENIED** and his petition is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, December 9, 2014.

LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE